DANIEL L. DYSART, Judge.
|, This matter comes before this Court after a remand to the district court in State ex rel. Orleans Parish Criminal Dist. Court v. City of New Orleans ex rel. Landrieu, 12-1756 (La.App. 4 Cir. 10/23/13), 126 So.3d 762. The facts giving rise to the first appeal were summarized as follows:
During 2012, a budget was proposed for the City to provide funding for the operation of the Clerk’s Office, including certain personnel. After the 2012 budget was approved, Chief Administrative Officer, Andrew Kopplin (“Mr. Kopp-lin”), informed the Clerk of Court in a March 2012 letter that the City intended to “hold back ... over two percent” of the funding appropriated for the Clerk of Court for the 2012 fiscal year “in order to mitigate budget risks to the city.” Following the City’s Revenue Estimating Conference in June 2012, Mr. Kopplin sent a letter in July to the Clerk of Court indicating that Mr. Kopp-lin was “directing the city budget office to reduce the [Clerk of Court’s] spending authority by 3.8 percent.” Mr. Kopplin further stated in the letter that pursuant to his direction the temporary “hold back” would be “a permanent reduction.”
In October, the Clerk of Court informed Mr. Kopplin that the Clerk’s Office did not have sufficient funds to buy office supplies. Consequently, Mr. Kopplin released additional funds to the Clerk of Court in order to purchase necessary office supplies.
Thereafter, the Clerk of Court filed a petition for writ of mandamus in the trial court alleging the City 12abused its discretion and acted arbitrarily and capriciously in refusing to fund the operations of the Clerk’s Office. The Clerk of Court further alleged that state law mandates the City to pay various funds including the salaries of his office’s employees in addition to other operating expenses. The City filed an exception of no cause of action alleging that the remedy of mandamus was not available in this case because the act of approving expenditures is inherently discretionary pursuant to the Home Rule Charter, which the trial court denied. After a trial on the merits, the trial court concluded that the Clerk of Court failed to establish how the City’s discretionary decision to reduce the budget of the Clerk’s Office under the Home Rule Charter was an abuse of discretion. Accordingly, the trial court denied the Clerk of Court’s petition for writ of' mandamus. The Clerk of Court then filed a motion for new trial, which was denied.
Id., 12-1756, pp. 2-3, 126 So.3d at 764.
The Clerk of Court appealed the trial court’s denial of its request for a mandamus. During the pendency of that appeal, the Louisiana Legislature enacted La. R.S. 13:1381.7. This statute notes that “adequate funding of the office of Clerk of the Criminal District Court for the parish of Orleans is necessary for the efficient performance of the powers and duties required of a judicial officer of the state,” and provides that “[t]he amounts to be appropriated and paid by the city of New Orleans for expenses, including salaries and maintenance of constitutional officers, their deputies, subordinates, and employ *716 ees shall not be reduced by the city of New Orleans without the consent of the legislature.” La. R.S. 13:1381.7 A.
Noting that the purpose of the newly enacted La. R.S. 13:1381.7 is “to clarify the City’s duty to pay the appropriated funding of the Clerk’s Office as mandated by state statutes” and “the necessity for the City to provide adequate funding to the Clerk’s Office,”[1] this Court found the statute “to be interpretive law” with “retroactive application.” Id., 12-1756, p. 9, 126 So.3d at 768. The district court’s denial of the Clerk of Court’s petition was reversed, and the case was remanded to the district court “for application of La. R.S. 13:1381.7.” Id., 12-1756, p. 10, 126 So.3d at 768.
After remand, on November 18, 2013, the Clerk of Court filed a Motion entitled “Motion and Memorandum in Support to Set for Hearing to Determine Whether Defendant Has Met Its Obligations in Funding the Criminal Clerk of Court In Accordance With the Recent Ruling of the Fourth Circuit” (the “Motion”).[2] In the Motion, the Clerk of Court alleges that the City “continues to refused [sic] to pay ‘the salaries of the deputy clerks appointed’ by [the Clerk of Court] as required by La. R.S. 13:1372.” (emphasis supplied). The Clerk of Court maintains that the City is “activity [sic] seeking to reduce the employees of the Clerk’s office.” The Clerk of Court attached two documents to its Motion: this Court’s opinion and a document entitled “Funding Summary,” which is neither authenticated nor explained in the Motion. In attaching the “Funding Summary” as an exhibit to the Motion, the Clerk of Court merely states that “in current budget allocations presented by the City to the City Council, the City seeks to reduce the Clerk’s employee allocation from 90.49 to 83.49 which is in violation of the law, as well as the ruling of the appeal court.”
The trial court set a hearing on the Motion for December 10, 2013. The record does not contain an opposition by the City to the Motion, nor a transcript of the hearing of the Motion. By judgment dated December 17, 2013, the trial court found that “La. R.S. 13:1381.7 prohibits the City under the Home Rule Charter from imposing a permanent budgetary hold back [sic].” The judgment then Lgranted “the Petition for Writ of Mandamus” [3] and ordered the City to “appropriate and fully fund the expenses, including the salaries of the employees and officers of the office of the Clerk of Criminal District Court for the 2012 fiscal year.” It further finds that “the City of New Orleans is prohibited from imposing a permanent budgetary hold back [sic] of the funding appropriated for the office of the Clerk of Criminal District Court for the 2012 fiscal year.”
From this judgment, the City appealed, and in its Petition for Suspensive Appeal, the City maintains that it “has already fully funded the Clerk’s Office for 2012 and any funds held back subsequently were paid to the Clerk[,]” but the City appealed the judgment “out of an abundance of caution.”
DISCUSSION
It is clear from the record that the issue before this Court is exclusive to the City’s funding of the Clerk of Court’s office for the year 2012 alone. No other funding is at issue.
*717 After our review of the record, we find that, on remand, the Clerk of Court did not substantiate its claims by any competent evidence.[4] We further find that the trial court’s December 17, 2013 judgment does not resolve the issues between the parties. A close reading of the judgment reflects that it simply reiterates the City’s statutory obligation to “fully fund the expenses, including the salaries of the employees and officers of the office of the [Clerk of Court].” By law, the City is | ¿required to pay the salaries of the employees of the Clerk of Court.[5] In this regard, the trial court’s judgment does nothing more than order the City to comply with the law.
In its appellate brief, the City states that it “paid the salaries of the employees set forth in La. R.S. 13:1372, and the Clerk presented no evidence that those salaries were not paid.” It argues that the “small percentage of the Clerk’s budget” that was held back in the 2012 budget was allowed pursuant to the City’s Home Rule Charter, which affords the City discretion to “alter budgetary allotments to keep expenditures within the revenues received or anticipated,” so long as the City is complying with its funding obligations mandated by statute. It maintains that the Clerk of Court put forth no evidence that the City “did not pay the salaries set forth in Louisiana law” and that the “amounts allocated for any additional court expenses were amounts that the City used its discretion to allocate.”
In response, the Clerk of Court’s appellate brief states that the City is mistaken in its assertion that it has fully funded the Clerk of Court’s office for the year 2012. It maintains that it has “17 ‘vacant positions’ ” and that the City “has not allowed” those positions to be filled. The Clerk of Court argues that “this appeal raises no issues not already addressed and ruled on by this Court in its Rearlier opinion” and that “[t]he only issue remaining is how much money [the Clerk of Court’s] office is owed by the City.”
We agree that the trial court made no determination as to whether the City actually met its statutory obligation to fund the Clerk of Court’s office for the year 2012. No evidence whatsoever was admitted as to this issue. We cannot address either the City’s contention that it has paid all amounts owed for 2012 (and all amounts originally budgeted by the City Council), nor the Clerk of Court’s contention that the City has not paid those amounts. As a court of review, we are *718 limited to a review of the record before us. See Melerine v. O’Connor, 18-1073, p. 8 (La.App. 4 Cir. 2/26/14), 135 So.3d 1198, 1205, citing Bd. of Dirs. of Indus. Dev. Bd. of City of New Orleans v. All Taxpayers, Property Owners, Citizens of New Orleans, 03-0826, p. 4 (La.App. 4 Cir. 5/29/03), 848 So.2d 740, 744 (a court of appeal is “a court of record, which must limit its review to the evidence in the record before it”). Accordingly, we can neither “review evidence that is not in the record on appeal [nor] receive new evidence.” Id. Likewise, arguments of counsel and pleadings are not considered evidence. See Coston v. Seo, 12-0216, p. 10 (La.App. 4 Cir. 8/15/12), 99 So.3d 83, 89, citing In re Melancon, 05-1702, p. 7 (La.7/10/06), 935 So.2d 661, 666; Garco, Inc. v. Rob’s Cleaning & Powerwash, Inc., 08-1249, p. 8 (La.App. 4 Cir. 4/22/09), 12 So.3d 386, 391.
Accordingly, we again remand this matter to the trial court for a determination of whether the City complied with its statutory obligation to fund the Clerk of Court’s office for the year 2012 and whether any amounts are owed by the City to the Clerk of Court for that year.
We next address the trial court’s conclusion that “La. R.S. 13:1381.7 prohibits the City under the Home Rule Charter from imposing a permanent |7budgetary hold back [sic]” and its further order that the City may not impose such a holdback “of the funding appropriated for the office of the Clerk of Criminal District Court for the 2012 fiscal year.”
The Louisiana legislature, in enacting La. R.S. 13:1381.7, made clear its intent that the Clerk of Court’s office shall have “adequate funding.” La. R.S. 13:1381.7 A. It is equally clear that the legislature intended in La. R.S. 13:1381.7 to ensure that the City pay only those sums which, by statute, the City is required to pay. Indeed, the statute provides that the City pay “for expenses, including salaries and maintenance of constitutional officers, their deputies, subordinates, and employees. ...” La. R.S.13:1381.7 A. This is further evidenced by subpart B, which states:
The legislature further finds that state statutes mandating payment by the city of New Orleans to the state’s employees and officers of the Clerk for the Criminal District Court for the parish of Orleans constitute • a valid exercise of state’s police power, and such statutes do not violate the provisions of the Louisiana Constitution of 1921 or the Louisiana Constitution of 1974.
La. R.S. 13:1381.7 B. (Emphasis added).
We read La. R.S. 1381.7 A’s provision that the City obtain legislative consent before reducing “[t]he amounts to be appropriated and paid by the city of New Orleans for expenses, including salaries and maintenance of constitutional officers, their deputies, subordinates, and employees” to mean that the City must seek legislative approval only when it seeks to reduce those funds which it is statutorily required to appropriate and provide. This reading is consistent with our jurisprudential principle that, “under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same | ^subject matter.” M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 14 (La.7/1/08), 998 So.2d 16, 27.
To the extent that the trial court’s ruling is that the City may never later reduce the amounts it originally appropriates when it adopts its budget, that ruling is vacated. The City’s Home Rule Charter expressly states:
*719 The adoption of the operating budget ordinance shall constitute an appropriation of the sums specified therein for the purposes and from the funds indicated. Such appropriation shall be considered valid only for the year for which made, and any part of such appropriation which is not encumbered or expended shall lapse at the end of the year.
Section 6-103(1), Home Rule Charter of the City of New Orleans.
As concerns the annual operating budget adopted by the City, the Home Rule Charter further provides:
The allotments herein provided may be altered at any time by the Chief Administrative Officer upon his own initiative or at the request of the head of an office, department or board and shall be altered at the direction of the Mayor. The Mayor shall direct appropriate revisions in allotments to keep expenditures within the revenues received or anticipated.
Section 6-103(4), Home Rule Charter of the City of New Orleans.
It follows, therefore, that the City may alter its budget even after it has been adopted by the City Council. La. R.S. 13:1381.7, construed together with Section 6-103(4), simply means that, while the City may alter its approved budget, if that alteration affects the City’s statutory obligation to fund the Clerk of Court’s office, the City must seek advanced legislative consent before altering those statutorily mandated sums. In the instant matter, again, the trial court made no determination as to whether the City’s reduction of the Clerk of Court’s spending authority |flfor the year 2012 affected any of the sums which the City is statutorily obligated to fund.
CONCLUSION
For the reasons set forth herein, the trial court’s judgment is vacated and this matter is remanded for further proceedings.
VACATED AND REMANDED.
BELSOME, J., concurs in the result.

. Id., 12-1756, p. 8, 126 So.3d at 767.

. Expedited consideration was requested.

. Apparently, the trial court’s judgment relates back to the Clerk of Court’s original Petition for Writ of Mandamus filed on October 5, 2012.

. Indeed, while a hearing was held on the Clerk of Court’s Motion, it does not appear that any evidence was admitted or testimony adduced. Similarly, at the hearing on the original Petition for a Writ of Mandamus, the trial court received no evidence and heard no testimony. Rather, the parties stipulated "to the substance of what Arthur Morrell was going to say in terms of identifying documents,” namely, the Petition for Writ of Mandamus and the attachments to same. . The attachments consisted solely of correspondence between the City and the Clerk of Court, discussed by this Court in State ex rel. Orleans Parish Criminal Dist. Court, 12-1756, pp. 2-3, 126 So.3d at 764.

. See La. R.S. 13:1371 (the "salary [of the clerk of the criminal district court] shall be paid by the city of New Orleans”); La. R.S. 13:1372 A (the salaries of the deputy clerks of the criminal district court "shall be paid by the City of New Orleans”); La. R.S. 13:1373 A ("the salaries of the minute clerks and of the court reporters shall be paid by the city of New Orleans”); La. R.S. 13:1374 (the “salaries [of 'the chief messenger and messengers of the criminal district court'] shall be paid by the City of New Orleans”).
We do not hold that this statutorily mandated funding is the exclusive amount to be paid by the City, as the issue of other expenses which have historically been paid by the City is not before us at this time.